[Cite as *In re R.A.*, 2021-Ohio-4126.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| IN RE R.A., ET AL. | : | |
| Minor Children | : | No. 110541 |
|  | : | |
| [Appeal by Mother, C.P.] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 18, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-19-913346, AD-19-913347, and AD-19-913348

*Appearances:*

Wargo Law, L.L.C., and Leslie E. Wargo, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Joseph C. Young and Zachary J. LaFleur,
Assistant Prosecuting Attorneys, *for appellee.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Appellant, C.P. ("Mother"), appeals from the trial court's judgments[1] granting the motion of the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") to modify temporary custody to permanent custody. After a careful review of the record and law, we affirm.

## Procedural History

{¶ 2} On October 31, 2019, CCDCFS filed a complaint alleging that the subject children, R.A., K.R., and E.R., were abused and neglected and requesting a disposition of temporary custody of the children. On the same date, CCDCFS filed a motion for predispositional temporary custody of the children, which the trial court granted.

{¶ 3} An adjudicatory hearing was held on January 23, 2020, at which Mother entered admissions to an amended complaint and all three children were adjudged to be abused and neglected. The parties agreed to move immediately to disposition and the children were committed to the agency's temporary custody.

{¶ 4} On September 8, 2020, CCDCFS filed a motion to modify temporary custody to permanent custody. On February 26, 2021, trial on the permanent custody motion was held before a magistrate. At the time of the hearing, R.A. was five years old, K.R. was three years old, and E.R. was one year old. On April 15, 2021,

---

[1] There are three children who are the subject of this case. Each child had their own case, but the proceedings occurred together. The trial court issued separate judgments relative to each child.

the magistrate issued her decision, which recommended permanent custody of the children to CCDCFS. On May 3, 2021, the trial court issued its final judgments for each child; the judgments terminated all parental rights and granted permanent custody to CCDCFS.

**Factual History: Trial Testimony**

{¶ 5} Two witnesses, CCDCFS social worker Lee Barbee, and a "wraparound services" specialist from the University Settlement Collaboration, Re'Ana Dixon, testified at trial;[2] the children's guardian ad litem ("GAL") also gave her recommendation on the motion for permanent custody. The following facts were adduced.

{¶ 6} The children lived with Mother and L.R. ("Father"),[3] father of E.R. and alleged father of K.R., in an upstairs/downstairs duplex home in Cleveland. The home was owned by a member of Father's family. Mother, Father, the three children, and two of Father's brothers lived in the upstairs portion of the home; other members of Father's family lived in the downstairs portion of the home. For a period of time leading up to this case, the house was being surveilled by the police because of suspected human trafficking and drug activity believed to be occurring in the upstairs portion of the home.

---

[2] Dixon explained that wraparound services collaborate with all the professionals who are working with a family or an individual so that everyone is connected as the family or individual work to achieve the objectives of their case plan.

[3] Father is not a party to this appeal and, therefore, will only be minimally discussed as is necessary to the resolution of Mother's appeal.

{¶ 7} The agency became involved with Mother and her children in October 2019, after the police raided the home and individuals in the home (not Mother or Father) engaged in a "shootout" with the police. The three subject children were found in the home in the vicinity of drugs and a known sex offender. The GAL reported that K.R., who was two years old at the time, had a beer in his hand. The children were described as "unkempt and dirty," and the condition of the house was described as "deplorable and unsanitary."

{¶ 8} The agency's goal for Mother was reunification with her children and a case plan was developed for her; the plan was to address issues regarding substance abuse, mental health, parenting, basic needs, and housing. Social worker Barbee testified that Mother failed to make significant progress on the plan.

{¶ 9} In regard to substance abuse, Mother was referred to services to address her substance abuse concerns twice — first in November 2019 and then again in March 2020; she refused services both times. Mother finally agreed to a drug assessment in August 2020. She was referred to outpatient treatment for alcohol abuse at that time, which she started, but was discharged after less than a month in the program for nonparticipation. Mother did not take another assessment until January 2021, which was more than four months after the agency filed its motion for permanent custody and one month before the permanent custody hearing. Between August 2020 and January 2021, Mother's alcoholism worsened, and she was recommended for intensive outpatient treatment. She began attending her outpatient treatments in January 2021, but the service provider

recommended inpatient treatment because she showed up to her outpatient treatment under the influence.

{¶ 10} Additionally, Mother generally failed to provide drug screens to the agency as requested. She cited transportation issues as the reason, but Dixon, the wraparound services specialist, testified that her agency had been providing Mother bus tickets for the express purpose of being able to make it to the services she needed to be compliant with her case plan. In March 2020, Mother did comply with the agency's request for a drug screen; it was positive for cocaine and marijuana.

{¶ 11} The agency also requested Mother to submit to random urine screens, which she refused to do. Mother did, however, provide tests for her substance abuse service provider. The results showed that she had six months of consecutive high testing for alcohol; she never provided a clean screen to her substance abuse service provider. According to social worker Barbee, Mother minimized the results of the screens, denied she had a problem, and maintained that the positive screens were "mistakes." As of the time of trial, Mother failed to provide a clean screen that would have allowed CCDCFS to establish a sobriety date. Social worker Barbee testified that the agency generally requires six months of sobriety after completion of treatment as a benchmark for reuniting parents with their children.

{¶ 12} In regard to mental health services, CCDCFS included that as part of Mother's case plan because she had a history of post-traumatic stress disorder and depression; thus, the agency referred Mother to a facility for a mental health assessment. Mother refused to submit to the assessment, stating that she did not

feel as though she had any mental health issues. But social worker Barbee testified that Mother was easily overwhelmed during visits with the children, had regular "outbursts," and often lost control during her interactions with CCDCFS staff. At the time of trial, Mother had not completed any mental health services.

{¶ 13} Parenting services were also a part of Mother's case plan. The testimony demonstrated that CCDCFS was concerned about Mother's decision-making. As mentioned, she allowed the children to be in the presence of a known sex offender. And in regard specifically to R.A., the agency had significant concerns. In particular, when R.A. came into the agency's custody he had significant scarring from an untreated throat infection; his condition ultimately required him to have surgery. He also had 12 cavities, did not know how to properly use the restroom, hoarded food, and demonstrated sexualized behaviors, which including him trying to have sex with another child at his daycare. R.A. also made statements that "he owned" children and they were "his property."

{¶ 14} Mother completed two parenting classes. The agency questioned if Mother benefited from the classes, however. Because of R.A's. severe throat infection he had to have a tonsillectomy in July 2020. Social worker Barbee testified that the agency was informed that the procedure was generally a 15-minute one, but it took one and a half hours to perform on R.A. because he had such a significant amount of infection and scarring built up in his throat and neck muscles. According to R.A.'s doctors, a second surgery was a possibility because of the severity of the infection and scarring.

{¶ 15} After R.A.'s surgery, his diet was specialized so as not to cause injury or irritation to his throat. The foster mother informed Mother about his dietary restrictions, which included limited salt. Despite knowledge of this, Mother brought McDonald's to a visitation with the children and allowed R.A. to eat fries, which caused irritation to his throat so severe the foster mother contemplated taking him to the hospital. Mother acknowledged that she was aware of R.A.'s dietary restrictions but stated she was bringing McDonald's for the other children and did not want to upset R.A. by telling him he could not have it. Further, after R.A.'s 12 cavities were filled, Mother gave him a "pocketful" of candy. These incidents resulted in Mother being re-referred to parenting classes, which she completed.

{¶ 16} The testimony further demonstrated that R.A. has developmental delays and is believed to be autistic. K.R. is believed to be autistic as well. At the time of trial, both R.A. and K.R. were receiving diagnostic and therapeutic services.

{¶ 17} In regard to the case plan goal of addressing housing and basic needs, social worker Barbee testified that Mother failed to complete that portion of the plan. CCDCFS was concerned about the drug activity in the house (which included drugs being out in the open) and the condition of the home at the time of the children were removed. The agency referred Mother to a community collaborative to work with to find new housing, but as of the time of trial, Mother was still living in the same house with Father; Barbee testified that Mother was dependent on Father, because she was not employed.

**{¶ 18}** At one point, Mother did indicate to CCDCFS that there were two family members for the agency to consider for placement of the children. However, she changed her mind in regard to one and never provided any contact information for either one. At the time of the permanent custody hearing, all three children were placed in the same foster home. Barbee testified that the foster mother was "very good" and "hands-on" with all of the children and believed that she would be willing to be a permanent placement for all three children.

**{¶ 19}** The children's GAL gave an oral report to the court, recommending permanent custody to CCDCFS. She credited Mother for being consistent with visitations with the children, but based her recommendation on the following: "[M]other has no known sobriety date, she's not engaged in mental health. She's connected to [Father], [has] no source of income, [and is] still living in that same home. [Father] may or may not be employed and he's just started services." Additionally, the GAL informed the court about the progress the children were making with their foster mother.

**{¶ 20}** On this testimony, the magistrate recommended that CCDCFS's motion for permanent custody be granted. After conducting an independent review of the matter, the juvenile court affirmed, approved, and adopted the magistrate's decision.

## Assignments of Error

**{¶ 21}** Mother now raises the following two assignments of error for our review:

I.      The trial court should have extended temporary custody.

II.      The evidence presented to the trial court did not support, by clear and convincing evidence, a finding that permanent custody to CCDCFS was in the best interests of the children.

## Law and Analysis

## Plain Error Review:  Failure to Object to Magistrate's Decision

{¶ 22} We initially note that Mother did not file objections to the magistrate's decision in accordance with Juv.R. 40(D)(3)(b).  The juvenile rules require an objecting party to (1) file written objections to a magistrate's decision within 14 days of the decision, (2) state with specificity and particularity all grounds for objection, and (3) support objections to a magistrate's factual finding with a transcript of the evidence submitted to the magistrate or an affidavit of evidence if a transcript is unavailable.  Juv.R. 40(D)(3)(b)(i)-(iii).

{¶ 23} If none of the parties files written objections, a trial court may adopt the "magistrate's decision unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision."  Juv.R. 40(D)(4)(c).  Additionally, the juvenile rules prevent a party from assigning "as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Juv.R. 40(D)(3)(b)(iv).  This rule "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal."  *In re Etter*, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998). Thus, under Juv.R.

40(D)(3)(b)(iv), parties who do not properly object to a magistrate's decision waive all but plain error. *See State ex rel. Neguse v. McIntosh*, 161 Ohio St.3d 125, 2020-Ohio-3533, 161 N.E.3d 571, ¶ 9, citing Civ.R. 53(D)(3)(b)(iv);[4] *Tucker v. Hines*, 10th Dist. Franklin No. 18AP-375, 2020-Ohio-1086, ¶ 6 ("party who fails to timely object to a magistrate's decision is limited by operation of Juv.R. 40(D)(3)(b)(iv) to claims of plain error on appeal"); *In re Z.A.P.*, 177 Ohio App.3d 217, 2008-Ohio-3701, 894 N.E.2d 342, ¶ 15 (4th Dist.).

{¶ 24} Thus, we review Mother's claimed errors under a plain-error standard. "Plain error is not favored and is only applicable in rare cases where the error 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *In re S.H.*, 8th Dist. Cuyahoga No. 100911, 2014-Ohio-4476, ¶ 12, quoting *S.J. v. J.T.*, 6th Dist. Lucas No. L-11-1011, 2011-Ohio-6316, ¶ 8.

**Extension of Temporary Custody**

{¶ 25} In her first assignment of error, Mother contends that the trial court "had no justified reason to not extend temporary custody in this case." Mother contends that there was a two-year period for her to complete her case plan and

---

[4] Civ.R. 53(D)(3)(b)(iv), which governs objections to a magistrate's decision, provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."

despite that period, the trial court scheduled the permanent custody hearing for eight months before the two-year deadline.

{¶ 26} R.C. 2151.353(G) governs the expiration of temporary custody orders and provides as follows:

> Any temporary custody order issued pursuant to division (A) of this section shall terminate *one year* after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section. In resolving the motion, the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of section 2151.415 of the Revised Code.

(Emphasis added.)

{¶ 27} Thus, the statutory term for a temporary custody order is one year; the two years only applies if a motion for an extension was filed, which it was not in this case. Even had an extension been filed, the record before us does not indicate that it likely would have been granted. R.C. 2151.415(D)(1), governing extensions of temporary custody, provides in pertinent part as follows:

> The court may extend the temporary custody order of the child for a period of up to six months, if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension. In determining whether to extend the temporary custody of the child pursuant to this division, the court shall comply with section 2151.42 of the Revised Code.

{¶ 28} The record does not establish that there was clear and convincing evidence that an extension would have been in the children's best interest, that there had been significant case plan progress, or that reunification was likely. Mother failed to engage in mental health services; she initially failed to engage in substance abuse services, and when she did, she showed up intoxicated to outpatient therapy, consistently tested drug and alcohol positive, and was discharged from outpatient therapy for lack of participation; and her housing and basic needs case plan objectives were also not satisfied.

{¶ 29} Mother also contends that the children wanted to be with her. R.C. 2151.414(D)(1)(b) requires a trial court that is evaluating a children services agency's permanent custody motion to consider the child's wishes "as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]" At the time of trial the children were five-, three-, and one-years old; they were too young to express their wishes as to custody and, therefore, their GAL gave her opinion on their behalf, stating that she believed permanent custody was in their best interests. Her opinion was supported by the record.

{¶ 30} Mother further contends that the trial court was not under a statutory deadline to complete and adjudicate the permanent custody. The trial court was guided by statutory timeframes, however, including R.C. 2151.414(A)(2), which provides in pertinent that:

> The court shall hold the hearing scheduled pursuant to division (A)(1) of this section not later than one hundred twenty days after the agency files the motion for permanent custody, except that, for good cause

shown, the court may continue the hearing for a reasonable period of time beyond the one-hundred-twenty-day deadline. The court shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion.

\* \* \*

The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court.

{¶ 31} Thus, Mother's contention that the juvenile court had no time requirement to complete and adjudicate the permanent custody motion is not well taken. The court did have a time framework within which to dispose of the motion.

{¶ 32} In light of the above, there was no error, plain or otherwise, in the trial court proceeding on the agency's motion for permanent custody when it did. The first assignment of error is overruled.

**Permanent Custody under R.C. 2151.414(B)**

{¶ 33} In her second assignment of error, Mother contends that the trial court erred by determining that an award of permanent custody to CCDCFS was in the children's best interest.

{¶ 34} A juvenile court applies a two-pronged test when considering a motion for permanent custody. To grant the motion, the juvenile court first must find that any of the factors in R.C. 2151.414(B)(1)(a)-(e) apply. Second, the court must determine that terminating parental rights and granting permanent custody to the agency is in the best interest of the child or children using the factors under

R.C. 2151.414(D). *In re De.D.*, 8th Dist. Cuyahoga No. 108760, 2020-Ohio-906, ¶ 16.

{¶ 35} "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re M.J.*, 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 24. "'Clear and convincing evidence' is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established." *In re T.S.*, 8th Dist. Cuyahoga No. 109957, 2021-Ohio-214, ¶ 23, quoting *In re Y.V.*, 8th Dist. Cuyahoga No. 96061, 2011-Ohio-2409, ¶ 13. If the grant of permanent custody is supported by clear and convincing evidence, we will not reverse that judgment. *In re J.J.*, 8th Dist. Cuyahoga No. 108564, 2019-Ohio-4984, ¶ 30.

{¶ 36} The Supreme Court of Ohio has explained the manifest weight standard as follows:

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [factfinder] that the party having the burden of proof will be entitled to their [judgment], if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 37} When conducting a manifest weight review, this court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley* at ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

> {¶ 38} In light of the above,
>
> [t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. *In re Satterwhite*, 8th Dist. Cuyahoga No. 77071, 2001-Ohio-4137. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. *Id.*, citing *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

*In re C.T.*, 8th Dist. Cuyahoga No. 87159, 2006-Ohio-1944, ¶ 15.

{¶ 39} With the above-mentioned standard in mind, we now review the two-pronged findings made by the trial court in ruling on CCDCFS's motion for permanent custody.

**First Prong Under R.C. 2151.414(B)**

{¶ 40} Under the first prong, the juvenile court must determine by clear and convincing evidence that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 41} Mother concedes that the juvenile court made an appropriate finding under R.C. 2151.414(B). According to Mother, "there is no dispute that the condition under R.C. 2151.414(B)(1)(d) was met because the children had been in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period." That is not the finding the court made, however. Rather, the juvenile court

found under R.C. 2151.414(B)(1)(a) that the children are not abandoned or orphaned, and have not been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period. The record supports the trial court's finding relative to the children's custodial history. Specifically, the children went into the agency's custody in October 2019, and remained in custody until the matter proceeded to trial in February 2021. Thus, at the time of trial the children had been in agency custody for a consecutive 16-month period and, therefore, the trial court's finding under R.C. 2151.414(B)(1)(a) was proper.

{¶ 42} The juvenile court further found under R.C. 2151.414(B)(1)(a), by clear and convincing evidence, that the children could not be placed with either parent within a reasonable time or should not be placed with either parent.

{¶ 43} When assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E). *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 13. A juvenile court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent. *In re Ca.T.*, 8th Dist. Cuyahoga No. 108969, 2020-Ohio-579, ¶ 27, citing *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 42. "Once a court determines, by clear and convincing evidence, that one of the enumerated factors exists, the court must enter a finding that the child cannot

or should not be placed with either of his parents within a reasonable time." *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000).

**{¶ 44}** In this case, the juvenile court found for each child, pursuant to R.C. 2151.414(E)(1), that,

> [f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

**{¶ 45}** In regard to R.A., the court found under R.C. 2151.414(E)(8) that Mother "repeatedly withheld medical treatment or food from [R.A.] when [Mother had] the means to provide the treatment or food." Additionally in regard to R.A., under the "catchall" section of R.C. 2151.414(E)(16), the juvenile court found the following:

> The child has ongoing special medical needs, including follow-up mouth and throat care, neurological treatment, developmental delays and possible autism spectrum disorder. The child also has ongoing behavioral and mental health issues, including improper hygiene, hyper-sexual tendencies, inappropriate language and irregular food habits. [Mother] has not participated in the treatment of the child despite being permitted to do so and has not demonstrated the ability to meet the child's special needs.

**{¶ 46}** Mother does not challenge the above-mentioned findings under the first prong. Our review of the evidence supports the trial court's application of R.C. 2151.414(E), as will be discussed in more detail below, and its finding pursuant to R.C. 2151.414(B)(1)(a) that the children could not be returned to Mother's custody within a reasonable time or should not be placed with Mother. We now turn to crux

of Mother's issue under the second assignment of error: whether a grant of permanent custody was in the children's best interest?

**Second Prong under R.C. 2151.414(B): Best Interest Determination**

{¶ 47} We review a juvenile court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 48} In determining the best interest of a child at a hearing held pursuant to R.C. 2151.414(A)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 49} A juvenile court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, but "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has previously stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993). Further, the Ohio Supreme Court has clarified that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, Slip Opinion No. 2020-Ohio-5102, ¶ 31.

{¶ 50} Here, the juvenile court expressed that it considered the relevant factors set forth under R.C. 2151.414(D)(1) when assessing the children's best interests. Upon careful review of the record, we do not find that the juvenile court abused its discretion in determining that permanent custody was in the children's best interest.

{¶ 51} R.C. 2151.414(D)(1)(a) relates to the interaction and interrelationship of the children with various significant individuals in the children's life, including parents, siblings, relatives, and foster caregivers. The record demonstrates that the children lived together in the same foster home and that the foster mother was dedicated to the children, "hands-on," and would consider permanent placement of

all three children should the trial court grant the agency's motion for permanent custody.

{¶ 52} Under R.C. 2151.414(D)(1)(b), the juvenile court was to consider the children's wishes as expressed directly or through their GAL. As discussed, at the time of trial, the children were five-, three-, and one-years old, and too young to express their wishes in regard to permanent custody. "The juvenile court properly considers the GAL's recommendation on the permanent-custody motion as part of the R.C. 2151.414(D)(1)(b) analysis where the children are too young to express their wishes." *In re B/K Children*, 1st Dist. Hamilton No. C-190681, 2020-Ohio-1095, ¶ 45. The children's GAL here recommended permanent custody to CCDCFS.

{¶ 53} R.C. 2151.414(D)(1)(c) is relative to the children's custodial history, which Mother concedes. Although Mother cites the incorrect finding regarding the children's custodial history, as discussed, the finding cited by the juvenile court was supported by the record.

{¶ 54} R.C. 2151.414(D)(1)(d) relates to the children's need for a legally secure placement and whether that can be achieved without a grant of permanent custody. The trial court in this case found that the children "cannot be placed with one of the child[ren]'s parents within a reasonable time or should not be placed with either parent." As mentioned, the trial court was required by statute to enter this finding under R.C. 2151.414(E) that the children cannot or should not be placed with either parent within a reasonable time because of the multiple factors established in that section of the statute. *In re Glenn*, 139 Ohio App.3d 105 at 113, 742 N.E.2d 1210.

This evidence supports the finding that the children's need for a legally secure permanent placement cannot be satisfied by placement with Mother within a reasonable time. Further, CCDCFS tried to investigate family placements for the children, but was unsuccessful.

{¶ 55} Under R.C. 2151.414(D)(1)(e), the juvenile court was to consider whether any of the factors in divisions (E)(7) to (11) of R.C. 2151.414 applied in relation to Mother and the children. The court made findings under subsections (8) and (16) relative to R.A. Specifically, under R.C. 2151.414(E)(8), the court found that Mother "has repeatedly withheld medical treatment or food from [R.A.] when [she] has the means to provide the treatment or food." And under the "catchall" provision of R.C. 2151.414(E)(16), the court found the following:

> The child has ongoing special medical needs, including follow-up mouth and throat care, neurological treatment, developmental delays and possible autism spectrum disorder. The child also has ongoing behavioral and mental health issues, including improper hygiene, hyper-sexual tendencies, inappropriate language and irregular food habits. [Mother] has not participated in the treatment of the child despite being permitted to do so and has not demonstrated the ability to meet the child's special needs.

{¶ 56} The above-mentioned findings were all supported by the testimony presented at trial. Moreover, the court was guided by the recommendation of the GAL, who spoke on behalf of the young children and recommended that it was in the best interests of each child to grant the agency permanent custody. And, as discussed, the testimony elicited at trial demonstrated that Mother has not fully satisfied the objectives of her case plan and has not proven that she can provide a

permanently stable environment for her children.  Accordingly, we conclude that the juvenile court's termination of parental rights and award of permanent custody of the children to CCDCFS is supported by clear and convincing evidence in the record. There was no error, plain or otherwise, in the trial court's decision.

{¶ 57} We recognize that the "termination of the rights of a birth parent is an alternative of last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21.  The purpose of the termination of parental rights statutes is to make a more stable life for children and to facilitate adoption to foster permanency for children.  *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67.  This court does not look upon these matters lightly, and this case is certainly no exception.  But in light of the above, there was competent credible evidence supporting the juvenile court's determination and the court did not abuse its discretion in finding that it was in the children's best interest to be placed in the permanent custody of CCDCFS.

{¶ 58} The second assignment of error is overruled.

{¶ 59} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LISA B. FORBES, J., CONCUR