[Cite as *In re J.S.*, 2022-Ohio-4517.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| IN RE J.S. | : | |
| | : | No. 111643 |
| A Minor Child | : | |
| | : | |
| [Appeal by V.G., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 15, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD20904682

### *Appearances:*

Edward F. Borkowski, Jr., *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant V.G. ("Mother") appeals the decision of the Cuyahoga County Juvenile Court terminating her parental rights and awarding custody of her minor child, J.S., to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "agency"). After a thorough review of the law and applicable facts, we affirm the judgment of the juvenile court.

## I. Factual and Procedural History

{¶ 2} CCDCFS first became involved in this matter in May 2020 when Mother had a mental health crisis that caused her to be hospitalized. Mother was unable to make a safety plan, so J.S. was brought into agency custody.[1]

{¶ 3} A case plan was created for Mother with the goal of reunification with J.S. The case plan included services for mental health, basic needs, including housing and employment, domestic violence, and substance abuse. R.S., the father of a sibling of J.S., was included on the case plan because he was believed to still be residing with Mother. His objectives included services to address his issues with mental health, domestic violence, employment, and basic needs. During the pendency of the case for J.S.'s sibling, R.S. failed to demonstrate the ability to provide appropriate care for his child, who ultimately was placed in the legal custody of a relative.

{¶ 4} The agency moved to modify temporary custody to permanent custody on October 5, 2021. The agency filed the motion because Mother had failed to complete her case plan services and substantially remedy the conditions that caused the removal of J.S.

{¶ 5} The juvenile court held a hearing on the motion on May 10, 2022. Caprisha Sinkfield, an extended services worker for the agency, testified at the

---

[1] J.S.'s father, S.S. ("Father"), did engage with the agency and last saw J.S. during a virtual visit in March 2021. He is not a party to this appeal.

hearing.  Sinkfield was not the initial worker on the case but was assigned in August 2020.

{¶ 6} The mental health aspect of the case plan provided for a mental health assessment and psychiatric services.  Sinkfield testified that at the time of trial, Mother was completing her appointments and following recommendations, although she noted that there had been a few gaps in services.  A psychiatric assessment was completed in January 2022, which recommended that Mother continue to see her counselor and take her prescribed medication.

{¶ 7} The services for substance abuse were later removed because Mother underwent random drug screens that were negative and had an alcohol and drug assessment that yielded no recommendations.

{¶ 8} Mother resided in Pennsylvania during a portion of the time this matter was pending but moved back to Cleveland in approximately April 2021.  Sinkfield testified that at the time of trial, Mother was leasing a home that was deemed appropriate for children.  Mother had maintained that she had resided in her home since September 2021.  Sinkfield was able to confirm with the landlord that Mother had been residing there, but he could not provide a signed lease.  Mother did not provide a signed lease to the agency until just prior to trial.  When Sinkfield visited the home, she noted that Mother had appropriate furniture and all the necessary kitchen utilities.  Further, on Sinkfield's initial check, she confirmed that Mother had sufficient food in the home and that the home had working utilities.

{¶ 9} However, there was a concern that Mother's former paramour, R.S., was also listed as a resident on the lease. This concerned the agency because there was a history of domestic violence between Mother and R.S. In particular, there was a domestic violence complaint filed against R.S. in January 2021. R.S. was charged with felonious assault and domestic violence and a protection order had been issued. The case was dismissed in November 2021 when Mother did not attend the trial.

{¶ 10} Mother was referred to Able Counseling for domestic violence classes, which she completed in March 2022. It was reported to Sinkfield that Mother was engaged throughout the course. Sinkfield testified that the domestic violence portion of the case plan was completed, but the concern remained since Mother was still residing with R.S. Mother asserted that she had made false allegations against R.S. and maintained that she did not have a problem with domestic violence.

{¶ 11} With regard to employment, Mother provided two pay stubs to Sinkfield prior to trial. She had started a new job in April 2022. Prior to that, Mother had not provided any proof of employment. Mother had reported working at temp agencies and Firehouse Subs but had never provided pay stubs from any other employer. Mother was unemployed from January 2022 to April 2022 but had told Sinkfield that she was on medical leave due to a foot injury. Mother did not provide proof of the injury or the medical leave, but Sinkfield did see a cast on Mother's foot. Sinkfield testified that Mother has still not shown stability in employment because she had only had her job for a month prior to trial.

{¶ 12} Sinkfield testified that J.S. had been placed with a relative caregiver, a maternal aunt, in August 2020. J.S. was doing well in the home with no behavioral concerns. This relative was willing to be a permanent placement for her; however, there was another caregiver, J.S.'s maternal uncle, that the agency was looking into first.

{¶ 13} Father was scheduled for weekly supervised visits, but he would either cancel or not show. His last visit with J.S. was a virtual visit in March 2021.

{¶ 14} Mother had weekly visits with J.S. that were supervised by Sinkfield, but she had not attended these visits since March 28, 2022. She had told Sinkfield that she had been unable to visit due to a work schedule conflict. Sinkfield asked Mother to let her know what days coordinated with her work schedule, but Mother failed to do so. Between March 28, 2022, and the time of trial, Mother had two virtual visits supervised by the relative caregiver. Sinkfield testified that J.S. looked forward to her visits with Mother and became very upset when a visit was canceled in early March.

{¶ 15} Sinkfield stated that she believed it would be in J.S.'s best interest for permanent custody to be awarded to the agency "due to the history of the case," which included inconsistency with housing, employment, and visitation. She stated that she did not believe that J.S. would be in a good environment by reuniting with Mother, particularly since Mother was still in a relationship with R.S.

{¶ 16} The guardian ad litem ("GAL") also provided his recommendation to the court. He stated that he had been involved with the family for some time and

had previously represented J.S. and her older sibling J.N., who is a teenager, in 2018. At that time, J.S. and her sibling had been removed from Mother's care due in part to issues with Mother's mental health. They were later reunified with Mother under an order of protective supervision by CCDCFS. This order was terminated in February 2020. J.N. is not a part of this appeal and is presently in the legal custody of her maternal grandmother.

{¶ 17} The GAL stated that J.S. attended all-day kindergarten and was doing well there. She has no behavioral or mental health issues.

{¶ 18} The GAL testified that he visited Mother in her home in October 2021, and R.S. was present. During this visit, the GAL advised Mother and R.S. that they should not be together because R.S. was violating a court-ordered protection order and risked arrest if he was found with Mother. Mother stated that she had made a false report about being assaulted. The GAL noted in his report that R.S. had previously been convicted of domestic violence. He also visited Mother's home in March 2022, and R.S. was not present at the time. Mother told the GAL that R.S. was back in Pennsylvania. It is evident from the transcript that R.S. was present at the hearing on the motion for permanent custody.

{¶ 19} The GAL stated that his major concern was preventing J.S. from being exposed to domestic violence. He had spoken with the maternal uncle, whom the agency was exploring as a permanent placement. The uncle resides in Arizona, which Mother felt was too far away to have consistent visits. The GAL stated that he believed that J.S. liked it out there and wanted to be with her uncle.

{¶ 20} The GAL ultimately stated that he believed permanent custody to the agency was in J.S.'s best interest because there were "too many red flags in this case here to reunite" J.S. with Mother.

{¶ 21} Following the hearing, the court granted the motion for permanent custody to CCDCFS and terminated Mother and Father's parental rights. The court found that J.S. had been in temporary custody of CCDCFS for twelve or more months of a consecutive twenty-two-month period under R.C. 2151.414(B)(1)(d). The court further found that J.S. could not or should not be placed with Mother or Father under R.C. 2151.414(E), noting that Mother and Father had demonstrated a lack of commitment to the child; that Father had abandoned the child; that J.S. had been previously removed from Mother's care; and that Mother had agreed with the initial adjudication and disposition of temporary custody.

{¶ 22} The juvenile court further found by clear and convincing evidence that it was in the best interest of J.S. to be placed in the permanent custody of the agency.

{¶ 23} Mother filed the instant appeal, raising one assignment of error for our review:

> The trial court abused its discretion by granting permanent custody of appellant's child to CCDCFS against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 24} The right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see also In re Murray*, 52

Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (a parent has a "'fundamental liberty interest' in the care, custody, and management" of his or her child). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 25} Because the termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14, it is "an alternative of last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. It is, however, "sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). "'All children have the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.* at ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life for the dependent children" and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 26} A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent custody have been established. *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919. Before a juvenile court can terminate parental rights and grant permanent custody of a child to CCDCFS, it must satisfy the two-prong test set forth in R.C. 2151.414. First, the juvenile court must find by clear and convincing evidence that one of the following conditions set forth in R.C. 2151.414(B)(1)(a) through (e) exists:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 27} In the instant matter, the juvenile court determined that the child had been in temporary custody of the agency for 12 or more months of a consecutive twenty-two-month period. Mother does not challenge that finding.

{¶ 28} Because the juvenile court found clear and convincing evidence to support a finding under R.C. 2151.414(B)(1)(d), it was not required to make any other finding under R.C. 2151.414(B). Nevertheless, the juvenile court made an alternative finding pursuant to R.C. 2151.414(B)(1)(a) and found by clear and convincing evidence that the child cannot be placed with one of the child's parents within a reasonable period of time and should not be placed with either parent. Mother challenges this determination. Though not required, we shall address her argument.

{¶ 29} For this finding, R.C. 2151.414(E) enumerates 15 factors for the trial court to consider. In this case, the trial court found the presence of R.C. 2151.414(E)(4), (10), and (16) factors. R.C. 2151.414(E) states, in relevant part:

(E) In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

\* \* \*

(10) The parent has abandoned the child.

\* \* \*

(16) Any other factor the court considers relevant.

{¶ 30} The juvenile court determined that both parents had demonstrated a lack of commitment to J.S. by failing to regularly support, visit, or communicate with her or by other actions demonstrating an unwillingness to provide an adequate permanent home for her. We find that there is competent credible evidence to support this finding. Mother had been inconsistent in her visits with the child, particularly in the time leading up to trial. There was also evidence in the record that Mother had continued her relationship with R.S., despite past domestic violence. "While a parent '[has] the right to associate freely with whom they choose,' this right 'must become subordinate to the best interests of the children' in the context of permanent custody determinations." *In re V.S.*, 8th Dist. Cuyahoga No. 109966, 2021-Ohio-1818, ¶ 21, quoting *In re Holyak*, 8th Dist. Cuyahoga No. 78890, 2001 Ohio App. LEXIS 3105, 11 (July 12, 2001).

{¶ 31} While not relevant to the instant appeal, the juvenile court found under R.C. 2151.414(E)(10) that Father had abandoned the child. He had last seen J.S. by virtual visit in March 2021.

{¶ 32} The trial court further considered other factors under R.C. 2151.414(E)(16), including that J.S. had previously been removed from Mother's care and that Mother was in agreement with the initial adjudication and disposition of temporary custody. We find that the record supports these factors, and Mother does not argue otherwise.

{¶ 33} Pursuant to R.C. 2151.414(E), if the court determines, by clear and convincing evidence, that one or more of the (E)(1)-(15) factors exist, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *See, e.g., In re I.R.*, 2021-Ohio-3103, 179 N.E.3d 138, ¶ 69 (8th Dist.) (based on its findings under R.C. 2151.414(E), the juvenile court was required to find that the child could not be placed with either of his parents within a reasonable time or should not be placed with either parent), citing *In re C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854, ¶ 58. Because our review reflects clear and convincing evidence relating to the above factors, the trial court properly found that J.S. cannot be placed with either parent within a reasonable time or should not be placed with either parent.

{¶ 34} Once the first prong is met, the juvenile court must find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). "Clear and convincing evidence" is that measure or degree of proof that "produce[s] in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *In re M.S.*, 8th

Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, at ¶ 8. A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence." *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 35} We review a juvenile court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 36} In determining the best interest of a child at a hearing held pursuant to R.C. 2151.414(A)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 37} A juvenile court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, but "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has previously stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993). Further, the Supreme Court of Ohio has clarified that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31.

{¶ 38} Here, the trial found permanent custody to be in the child's best interest after its consideration of (a) the interaction and interrelationship with her parents, siblings, relatives, and foster parents, (b) the wishes of the child, (c) the child's custodial history, (d) the child's need for a legally secure permanent placement, and (e) the report of the GAL. Our review of the record supports the court's determination.

{¶ 39} R.C. 2151.414(D)(1)(a) relates to the interaction and interrelationship of the child with various significant individuals in the child's life, including parents, siblings, relatives, and foster caregivers. The record demonstrates that J.S. had been placed with relatives, was able to regularly see her sister (who is in legal custody of relatives), and was excelling in school.

{¶ 40} Further, Mother's visits had become inconsistent; while she claimed that the visits conflicted with her work schedule, there was no evidence that she attempted to reschedule the visitation. There was testimony that Mother and J.S. had a good relationship; however, this court has recognized that the best interest of the child requires permanency and a safe, secure environment, and the mere existence of a good relationship is insufficient. *In re K.M.*, 8th Dist. Cuyahoga No. 95374, 2011-Ohio-349, ¶ 23.

{¶ 41} Under R.C. 2151.414(D)(1)(b), the juvenile court was to consider the child's wishes as expressed directly or through her GAL. At the time of trial, J.S. was five years old and wished to live with a family member in Arizona. The GAL stated that he did not believe that J.S. understood the concept of the distance between Ohio and Arizona but acknowledged that the Arizona location may be the best possible place for her. The GAL recommended permanent custody to CCDCFS, in order to prevent J.S. from being exposed to domestic violence. He stated that permanent custody to the agency was in J.S.'s best interest because there were "too many red flags in this case here to reunite."

{¶ 42} R.C. 2151.414(D)(1)(c) relates to the child's custodial history. At the time of trial, J.S. had been in the custody of the agency for two years and it was the second time she was in agency custody.

{¶ 43} R.C. 2151.414(D)(1)(d) relates to the child's need for a legally secure placement and whether that can be achieved without a grant of permanent custody. The trial court found that J.S. deserved a safe and stable environment where she can thrive and her needs can be met. The court further found that factors existed under R.C. 2151.414(E), as discussed above, and consequently found that J.S. cannot be placed with one of her parents within a reasonable time or should not be placed with either parent. "'Once a court determines, by clear and convincing evidence, that one of the enumerated factors exists, the court must enter a finding that the child cannot or should not be placed with either of [her] parents within a reasonable time.'" *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 43, quoting *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000).

{¶ 44} Mother argues that she had made significant progress on her case plan and was able to provide a secure placement for her child. This court has noted that

> "[t]he case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. *In re J.L.,* 8th Dist. [Cuyahoga No. 84368, 2004-Ohio-6024, ¶ 20; *In re Mraz*, 12th Dist. Brown Nos. CA2002-05-011 and CA2002-07-014, 2002-Ohio-7278.]"

*In re S.P.*, 8th Dist. Cuyahoga No. 111081, 2022-Ohio-2277, ¶ 38, quoting *In re C.C.,* 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 25 (8th Dist.).

{¶ 45} Under R.C. 2151.414(D)(1)(e), the juvenile court was to consider whether any of the factors in divisions (E)(7) to (11) of R.C. 2151.414 applied in relation to Mother and the child. Although not relevant to Mother's appeal, the trial court determined that R.C. 2151.414(E)(10) applied in that Father had abandoned J.S. None of the factors appear to have been applicable to this matter and Mother does not argue otherwise.

{¶ 46} The above-mentioned findings were all supported by the testimony presented at trial; thus, the juvenile court's decision was based upon competent and credible evidence. We find that the juvenile court did not abuse its discretion in determining that permanent custody was in the best interest of J.S., and this decision was not against the manifest weight of the evidence. Mother's sole assignment of error is overruled.

### III. Conclusion

{¶ 47} After thoroughly reviewing the entire record, we affirm the juvenile court's judgment granting permanent custody of J.S. to CCDCFS. The juvenile court did not abuse its discretion, and its decision was not against the manifest weight of the evidence. Mother's sole assignment of error is overruled.

{¶ 48} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

ANITA LASTER MAYS, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR