[Cite as *In re M.W.*, 2017-Ohio-8580.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105565**

**IN RE: M.W., ET AL.**
**Minor Children**

[Appeal By Mother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 15902651 and AD 15902653

**BEFORE:** S. Gallagher, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** November 16, 2017

**ATTORNEYS FOR APPELLANT**

Mark Stanton
Cuyahoga County Public Defender
By: Erika B. Cunliffe
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio    44113

Morgan L. Pirc
Assistant Public Defender
9300 Quincy Avenue, 5th Floor
Cleveland, Ohio    44106


**ATTORNEYS FOR APPELLEE, C.C.D.C.F.S.**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Anthony R. Beery
Assistant Prosecuting Attorney
C.C.D.C.F.S.
4261 Fulton Parkway
Cleveland, Ohio    44144

**For D.D., Father**

Troy M. Hough
21887 Lorain Road, #306
Cleveland, Ohio    44126

**Also listed:**

**Guardian ad litem for Children**

Richard D. Summers
McDonald Hopkins Co., L.P.A.
600 Superior Avenue, E., Suite 2100
Cleveland, Ohio    44114

**Guardian ad litem for Mother**

Susan K. Jankite
1253 Arlington Road
Lakewood, Ohio    44107

SEAN C. GALLAGHER, J.:

{¶1} Appellant mother ("Mother") appeals from the orders awarding permanent custody of her two children, M.W. and D.D., to the Cuyahoga County Division of Children and Family Services ("CCDCFS"). Upon review, we affirm.

{¶2} On February 26, 2015, CCDCFS filed a complaint alleging M.W. and D.D. to be neglected and dependent children. Along with the complaint, CCDCFS filed a motion for predispositional temporary custody, which was granted by the court magistrate. The children were placed in the emergency custody of CCDCFS on March 10, 2015.

{¶3} A case plan was developed for Mother and the alleged father. The alleged father did not engage in any services or visit with the children during the pendency of the case. The case plan for Mother included parenting classes, domestic violence services, mental health services, and meeting the special needs of the children. The permanency plan was reunification.

{¶4} An adjudicatory hearing was held on June 23, 2015. The parents stipulated to an amended complaint, and the magistrate adjudicated the children as dependent. The magistrate's decision was adopted by the trial court.

{¶5} Among the allegations stipulated to in the amended complaint were that M.W. was previously adjudicated neglected and dependent because of concerns of domestic violence between Mother and the children's alleged father, that there was a need to ensure that the children receive services to address their developmental delays, and that Mother requires mental health treatment.

{¶6} The children were committed to the temporary custody of CCDCFS. On March 1, 2016, the trial court granted a motion for first extension of temporary custody. On June 16, 2016, CCDCFS filed a motion to modify temporary custody to permanent custody. The

CCDCFS social worker involved in the case testified that there was still hope that "mom can turn things around * * * and that we can be able to take our motion off the table. It just wasn't able to happen in this case."

{¶7} The trial court conducted a hearing on January 24 and 25, 2017. There was no dispute that the children had been in the custody of CCDCFS for 12 or more months of a consecutive 22-month period.

{¶8} There was evidence that Mother engaged in case plan services. She completed two parenting classes, engaged in domestic violence services, and engaged in mental health services. However, at the time of the hearing, there was uncertainty as to whether Mother had benefitted from these services.

{¶9} There was evidence of a history of domestic violence in the home between Mother and the alleged father of the children, with the alleged father being the aggressor. After Mother's completion of a first domestic violence class, an incident occurred involving Mother and the alleged father, with Mother's oldest child, who is not involved in this case, present in the home. Mother was still actively engaged in domestic violence services at the time of the permanent custody hearing. There was evidence that Mother has maintained a relationship with the alleged father, who is in prison and due to be released in 2018.

{¶10} There was testimony concerning the developmental delays and special needs of the children. Both children receive mental health services and occupational therapy, and M.W. also receives speech therapy and physical therapy. The foster mother testified that she takes the children to appointments three to four days a week. The record reflects that the children had bonded with their foster mother. Although the foster mother did not plan to adopt the children, she was ensuring that their special needs were being met. She stated that she expressed to

Mother the importance of keeping up with their appointments.

{¶11} There was major concern with Mother's level of involvement with the special needs of the children. Despite the recommendation of the social worker and efforts of the foster mother to involve Mother in the children's therapies and appointments, Mother attended only one appointment in two years and was late to that appointment.

{¶12} The doctor who performed a psychological evaluation of Mother identified concerns for Mother's parenting style, her lack of insight into why she is involved with CCDCFS, and her history of being in a relationship that involved domestic violence.

{¶13} There was testimony that Mother received mental health services at Murtis Taylor, but she was inconsistent in her engagement with these services. There was testimony that Mother was noncompliant with taking medication.

{¶14} There was evidence that Mother had obtained stable housing. Mother's visitation with the children had been moved to her home, but the visitation was moved out of the home after the domestic violence incident with the alleged father while her oldest child was in the home. Although certain concerns were expressed with regard to Mother's parenting, there was testimony that Mother's interaction with the children was appropriate and that the children loved their mother and were bonded with her.

{¶15} The guardian ad litem for the children made a recommendation for a second extension of temporary custody, though he had recommended permanent custody for the children in his written report. The guardian ad litem indicated Mother had just completed a parenting class and needed time to demonstrate that she had benefitted. Nevertheless, he admitted that Mother's failure to attend all but one of the children's appointments over a two-year period was a "major concern" and opined that Mother was not ready to reunify with the children. Likewise,

the social worker testified that the children had been in the custody of the agency since March 2015 and that she did not believe the mother could be reunified with the children within the next two months.

{¶16} After considering the testimony presented, the trial court issued a journal entry for each child, journalized February 23, 2017, that terminated all parental rights and awarded permanent custody to CCDCFS. This appeal followed.

{¶17} Mother raises one assignment of error for our review, which challenges the trial court's decision to award permanent custody of the children to CCDCFS. Mother claims the trial court's decision is contrary to the evidence presented.

{¶18} R.C. 2151.414(B) allows a court to grant permanent custody of a child to a children services agency if, after a hearing, the court determines, by clear and convincing evidence, that permanent custody is in the best interest of the child and that any of the four conditions set forth in R.C. 2151.414(B)(1)(a)-(e) applies. The Supreme Court of Ohio has defined "clear and convincing evidence" as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶19} There is no dispute that the condition under R.C. 2151.414(B)(1)(d) was met because the children had been in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period. Mother challenges the trial court's determination that permanent custody was in the best interest of the children.

{¶20} If any of the conditions outlined in R.C. 2151.414(B)(1)(a)-(e) exists, the trial court

may proceed to consider whether the grant of permanent custody to the agency is in the best interest of the child. *In re J.G.*, 8th Dist. Cuyahoga No. 100681, 2014-Ohio-2652, ¶ 44. In conducting a best-interest analysis under R.C. 2151.414(D), "[t]he court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

**{¶21}** In determining the best interest of a child, R.C. 2151.414(D)(1) directs the trial court to consider "all relevant factors," including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply. R.C. 2151.414(D)(1)(a)-(e).

**{¶22}** Here, the trial court considered the evidence presented. Notwithstanding the recommendation of the guardian ad litem, upon considering all the relevant factors pursuant to R.C. 2151.414(D), the court found by clear and convincing evidence that an order of permanent custody is in the best interest of the children.

**{¶23}** The court found that father had neglected the children by failing to regularly visit, communicate with, or support the children; and that his repeated incarceration prevented him from providing care for the children. The court considered Mother's engagement in case plan services, but believed she had failed to benefit from them. The court recognized that Mother

had been noncompliant in taking medication as prescribed and that she had failed to consistently attend her counseling. The court also found that "mother has not made reasonable efforts to acquire the needed knowledge to address the [children's] needs" as evidenced by "her failure to attend the speech, hearing and physical therapy sessions that the [children] participated in." Further, the court found that Mother had "demonstrated a lack of commitment towards the [children] by failing to end the relationship with the alleged father where she is the victim of [d]omestic [v]iolence." Although Mother takes issue with the findings of the trial court as being "(1) overstated, (2) wrong or outweighed by alternative factors and concerns," our review reflects that the trial court appropriately considered the relevant factors in determining the best interest of the children and that its findings are largely supported by competent, credible evidence in the record.

{¶24} Furthermore, the trial court acted within its discretion in choosing not to follow the oral recommendation of the guardian ad litem, who advocated for a second extension of temporary custody. A trial court is not bound to follow a guardian ad litem's recommendation. "Although the trial court was required to consider the guardian's recommendation as well as each of the other statutory best interest factors * * * '[t]he best interest test is a balancing test of several factors and the Supreme Court has stressed that no single factor is controlling.'" *In re O.G.*, 9th Dist. Lorain No. 12CA010294, 2013-Ohio-744, ¶ 24, quoting *In re C.G.*, 9th Dist. Summit Nos. 24097 and 24099, 2008-Ohio-3773, ¶ 28. It is evident that a "major concern" in this matter was Mother's failure to attend all but one of the children's appointments over the pendency of the case; and several witnesses, including the guardian ad litem, opined that Mother was not ready to reunify with the children, who had been in temporary custody for nearly two years.

**{¶25}** Although the foster mother was not prepared to adopt the children, the Supreme Court of Ohio has recognized that "the current statutory framework does not expressly require the court to consider [the child's probability of being adopted] in making a best-interest determination, R.C. 2151.414(D)." *In re T.R.*, 120 Ohio St.3d 136, 2008-Ohio-5219, 896 N.E.2d 1003, ¶ 14. As stated in *In re T.R.*, "the court is not required to factor adoption possibilities into its analysis, and the agency will be bound to seek adoption for the child if permanent custody is granted[.]" *Id.* at ¶ 16.[1] There is no doubt that when parental rights are terminated, the goal is to create "a more stable life for the dependent children and to facilitate adoption to foster permanency for children." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

**{¶26}** We reiterate that it is the best interest of a child that is the pivotal factor in a permanency case, and that neglected and/or dependent children are entitled to a stable, secure, nurturing, and permanent home in the near term. *In re N.B.*, 8th Dist. Cuyahoga No. 105028, 2017-Ohio-1376, ¶ 30. Our review of the record shows that the trial court's determination as to each child is supported by clear and convincing evidence and is not against the manifest weight of the evidence in the record. We overrule the assignment of error and affirm the trial court's decisions awarding permanent custody of each child to CCDCFS and terminating Mother's parental rights.

**{¶27}** Judgment affirmed.

---

[1] As held in *In re T.R.*, although R.C. 2151.413(E) "requires a children-services agency seeking permanent custody of a child to update the child's case plan to include adoption plans," the statute "does not require the agency to perform this action before the juvenile court rules on the motion for permanent custody." *Id.* at ¶ 8.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
MELODY J. STEWART, P.J., DISSENTS WITH SEPARATE DISSENTING OPINION

MELODY J. STEWART, J., DISSENTING:

{¶28} I respectfully dissent from the majority decision in this case. The trial court abused its discretion by terminating Mother's parental rights. The evidence does not support a finding that the termination of Mother's parental rights would be in the best interest of the children under the circumstances of this case.

{¶29} As the majority notes, R.C. 2151.414(D)(1) sets forth factors for the court to consider when determining whether terminating parental rights is in the best interest of the child. Those factors include the interaction and interrelationship of the child with the parents, siblings, and foster parents; the custodial history of the child; and the child's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody.

{¶30} In this case, Mother engaged in the case plan services and mental health services, she has stable housing, is appropriate with her children, and her children love her and are bonded with her. The primary concerns about Mother maintaining her parental rights center around

domestic violence issues with the alleged father and Mother's lack of attendance to her children's mental health, occupational therapy, physical therapy, and speech therapy appointments.

{¶31} The alleged father is incarcerated, and at the time of the permanent custody hearing, Mother was still actively engaged in domestic violence services. Furthermore, although the lack of initiative in routinely attending her children's appointments could, admittedly, be seen as demonstrating a lack of commitment to her children, there was no evidence that attending these appointments was required of Mother or a part of her case plan. The children's foster mother is responsible for making sure the children get to their appointments. And, although the foster mother stressed to Mother the importance of keeping up with the appointments, what is not clear is whether Mother understood this expression to mean that it is important to keep up with them now or when/if she gets her children back. To be sure, the evidence shows that Mother was told about the various appointments, but not that her attendance was required. As such, it may not have been clear to Mother that reunification was predicated on her attending the children's appointments while the foster mother was still responsible for taking them.

{¶32} Finally, the most salient reason it appears that terminating Mother's parental rights at this time is an abuse of discretion is due to the fact that doing so would not change the children's status. The foster mother is not interested in adopting the children and will continue to foster them. This status can be maintained while mother has clear and specific expectations relayed to her on what is required to maintain her parental rights and get her children back. This is not a case where the parent has not made significant strides toward reunification. And because the children will continue to be well cared for in the foster mother's home, regardless of whether Mother's rights are terminated, extending the opportunity for reunification seems to be

in the best interest of the children under the circumstances of this case, while terminating Mother's parental rights does not.  I would find, therefore, that the trial court abused its discretion.