[Cite as *In re M.S.K.*, 2023-Ohio-316.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| IN RE M.S.K. | : | |
| | : | No. 111974 |
| A Minor Child | : | |
| | : | |
| [Appeal by D.K., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 2, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD22904957

***Appearances:***

Dawn Snyder Attorney at Law, LLC, and Dawn Snyder, *for appellant*.

Michael O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant D.K. ("Mother") appeals the judgment of the Cuyahoga County Juvenile Court terminating her parental rights and awarding permanent custody of her minor child, M.S.K., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "agency"). After a thorough review of the applicable law and facts, we affirm the judgment of the juvenile court.

# I. Factual and Procedural History

{¶ 2} M.S.K. was born on January 11, 2022, at 29 weeks' gestation, and tested positive for cocaine when he arrived at the hospital following his birth at home. Mother also tested positive for cocaine at that time.

{¶ 3} M.S.K. was discharged and placed in a foster home on April 20, 2022. The foster parents had received the training required by the hospital in order to care for M.S.K.'s health issues.

{¶ 4} In May 2022, the agency filed a complaint alleging that M.S.K. was abused and dependent and requesting permanent custody be awarded to CCDCFS. An adjudicatory hearing was held in July 2022, where Mother stipulated to an amended complaint, and M.S.K. was adjudicated abused and dependent. The matter was continued for a dispositional hearing, prior to which Mother filed a motion asking the court to place M.S.K. in the temporary custody of CCDCFS.

{¶ 5} A dispositional hearing was held in August 2022, where Mother appeared with her counsel. The agency presented the testimony of social worker Terri Fulton. The guardian ad litem ("GAL") also testified and presented her report.

{¶ 6} Ms. Fulton testified to the case plan implemented in this matter, which included services for mental health, substance abuse, and basic needs. With regard to the substance abuse aspect, Mother initially declined any agency referrals but contacted Women's Recovery Center on her own. She underwent an alcohol or other drugs ("AOD") assessment and was referred to an Intensive Outpatient Program

("IOP"). She was unsuccessfully discharged from the program in April 2022 due to her lack of contact and engagement with Woman's Recovery Center.

{¶ 7} Mother then contacted another organization, The Centers, and underwent an AOD assessment at the end of June 2022. She was again referred to an IOP and completed one individual session in July 2022 before she was unsuccessfully discharged at the end of July due to her lack of engagement and contact with them.

{¶ 8} She underwent several drug screens, testing positive for marijuana and cocaine in January 2022, testing negative in February, and then testing positive twice for cocaine, with the most recent screen occurring on March 3, 2022. Ms. Fulton stated that Mother had not satisfied the substance abuse aspect of the case plan, and that the agency remained concerned with her substance abuse because she had not demonstrated sobriety and had failed to follow through with treatment recommendations.

{¶ 9} Ms. Fulton testified as to the mental health aspect of Mother's case plan. Mental health services were made a part of the case plan because Mother reported that she had been diagnosed with depression and PTSD. Mother had completed a mental health assessment but had not engaged in any of the recommended counseling. She had two psychiatry appointments scheduled but failed to show.

{¶ 10} Ms. Fulton testified that when the agency had attempted to discuss the substance abuse and mental health issues with Mother, she would tell them that she would call them later but then never followed up.

{¶ 11} Finally, Ms. Fulton testified as to the basic needs aspect of Mother's case plan. Basic needs in this matter included shelter, stable housing, and basic infant supplies. Mother had obtained a bassinet from the Community Collab, but the agency believed that was the only baby supply Mother had.

{¶ 12} Ms. Fulton stated that Mother has not had stable housing. She has lived at her mother's house and at the residences of her employment supervisor and someone that she described as her sponsor. The agency was only able to verify the apartment Mother shared with her supervisor.

{¶ 13} Ms. Fulton then testified as to M.S.K.'s medical issues, which required careful monitoring of his heart rate and oxygen levels. After spending 99 days in the NICU, M.S.K. was sent to the foster home on a cardiorespiratory monitor that alerted his caregivers if his heart rate or breathing dropped too low. He was taken off the monitor at the end of June 2022, but his doctor expressed concern that now whoever is supervising M.S.K. would not be alerted that his heart rate or respirations were dropping.

{¶ 14} Mother had four in-person visits with M.S.K. from the end of May to the middle of June. M.S.K.'s doctor was concerned about him traveling to, and being at, the visits with untrained personnel. Mother attended M.S.K.'s doctor

appointment at the end of June and was able to speak with the doctor about M.S.K.'s health issues.

{¶ 15} Ms. Fulton was also present at the doctor appointment and stated that Mother was very jittery and could not sit still; she was bouncing while holding M.S.K., which is not good for him. M.S.K. has severe gastroesophageal reflux disease ("GERD"), and a lot of movement can cause him to spit up. Ms. Fulton stated that the formula that M.S.K. had drank during the visit ended up coming back up.

{¶ 16} Ms. Fulton stated that during the visit, it did not appear that Mother understood the severity of M.S.K.'s issues. She argued with the doctor and tried to get him to change his opinion about M.S.K. traveling to the visits. M.S.K. had an additional appointment on August 11, 2022, which Mother was notified about but did not attend. At this appointment, Ms. Fulton asked the doctor for his opinion about M.S.K. being transported for visits. The doctor stated that because of M.S.K.'s severe GERD, it was not safe for him to be in a car seat for long distances and he felt that it was not in M.S.K.'s best interest to have the visits. The concern is that because of the GERD, M.S.K. might potentially aspirate some formula, which could be life-threatening. The ride to visit with mother was 1 ½ hours each way because the foster home is located in Holmes County, and the visits were held at a library in Cleveland.

{¶ 17} Ms. Fulton testified regarding Mother's visits with M.S.K. She attempted to do virtual visits with Mother and M.S.K. in July and August. Ms. Fulton ensured that Mother had the proper video call application on her phone to

be able to engage in the virtual visit, but Mother did not appear. Ms. Fulton called her several times during each scheduled visit, but Mother did not answer.

{¶ 18} Ms. Fulton further testified that Mother has two older children who are in the permanent custody of the agency and another whose father has legal custody of him. The first child, J.K., was adjudicated neglected in 2018 due to Mother's substance abuse and mental health concerns. Permanent custody was awarded to the agency in September 2019 because of Mother's continued substance abuse.

{¶ 19} The second child, P.L.-K., was adjudicated neglected and dependent in 2019. Mother tested positive for cocaine and marijuana at the time of P.L.-K.'s birth. Permanent custody of P.L.-K. was awarded to the agency in October 2019 also due to Mother's continued substance abuse.

{¶ 20} When asked what the barrier to reunification with M.S.K. was, Ms. Fulton stated it was Mother's continued substance use as well as her lack of mental health engagement. Ms. Fulton stated that the agency chose to seek permanent custody rather than temporary custody because of Mother's history involving the permanent custody of the two older children.

{¶ 21} On cross-examination, Ms. Fulton stated that Mother had not been aware that she was pregnant at the time of M.S.K.'s birth. He was born in the bathtub of her home, and Mother performed CPR on him until paramedics arrived.

{¶ 22} Cross-examination further elicited testimony that Mother's mother had cancer and that Mother was one of her primary caregivers. Ms. Fulton stated

that Mother did not express any difficulty with being able to manage the care of her sick mother and the IOP. Ms. Fulton only learned that Mother's mother was sick with cancer the week prior to the hearing.

{¶ 23} Ms. Fulton acknowledged that Mother cared for M.S.K. appropriately during her supervised visits, including changing his diaper and feeding him from a bottle. In addition, Ms. Fulton agreed that Mother was currently employed and on the CMHA wait list for housing.

{¶ 24} The GAL provided a written report to the court and further testified regarding her recommendation. She recommended that M.S.K. be committed to the temporary custody of the agency. The GAL acknowledged that she had also been the GAL on the cases of the older children who had been placed in the agency's permanent custody and was familiar with the circumstances of the cases. She noted that in the prior cases, Mother did not engage in any case plan services.

{¶ 25} The GAL stated that she has seen changes in Mother and that it is very clear that Mother wants the opportunity to be reunified with M.S.K. She noted that Mother believes it is in M.S.K.'s best interest to remain in agency custody so that she can have additional time to achieve the case plan objectives. Ms. Fulton also mentioned that Mother was arrested in June 2022 for disorderly conduct/intoxication and also has a felony-drug-possession charge from February 2021. A capias was issued for Mother's failure to appear on these charges. Notwithstanding the pending charges, the GAL stated that she believes that Mother

would be able to provide a legally secure placement for M.S.K. within the time allotted for temporary custody.

{¶ 26} Following the hearing, the court denied Mother's motion for temporary custody, granted the motion for permanent custody to CCDCFS, and terminated Mother's parental rights. The trial court made the following findings:

> The Court finds that the allegations of the complaint as amended [have] been proven by clear and convincing evidence.
>
> The Court further finds that the child is not abandoned or orphaned, and has not been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period.
>
> There are no relatives of the child who are able to take permanent custody.
>
> The Court further finds that following placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home; paternity has not been established.
>
> The chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year.
>
> The Court further finds that:
>
> The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and was discharged from treatment two or more times after a case plan issued requiring treatment of the parent was journalized as part of a dispositional order issued with

respect to the child or an order was issued by another court requiring treatment of the parent;

The alleged father has abandoned the child;

The mother has had parental rights terminated with respect to a sibling of the child and the parent has failed to provide clear and convincing evidence to prove, that notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child;

The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

The parent has committed abuse against the child and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety. Child has special needs.

Upon considering the interaction and interrelationship of the child with the child's parent; the age of the child; the custodial history of the child; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and the report of the Guardian ad Litem; the Court finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the child and the child cannot be placed with one of the child's parents within a reasonable time and should not be placed with either parent.

* * *

The Court finds that the child's continued residence in or return to the home of Mother, [D.K.,] to be contrary to the child's best interest.

{¶ 27} Mother filed the instant appeal, raising two assignments of error for our review:

1. The trial court erred when it awarded permanent custody to CCDCFS as the decision is against the manifest weight and is not supported by clear and convincing evidence.

2. The trial court abused its discretion when it granted permanent custody to CCDCFS when a disposition of temporary custody was available.

## II. Law and Argument

{¶ 28} The right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see also In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (a parent has a "'fundamental liberty interest' in the care, custody, and management" of his or her child). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 29} Because termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14, it is "an alternative of last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. It is, however, "sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). "'All children have the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline,

protection and motivation.'" *In re J.B.* at ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life for the dependent children" and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 30} A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent custody have been established. *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919. Before a juvenile court can terminate parental rights and grant permanent custody of a child to CCDCFS, it must satisfy the two-prong test set forth in R.C. 2151.414. First, the juvenile court must find by clear and convincing evidence that one of the following conditions set forth in R.C. 2151.414(B)(1)(a) through (e) exists:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 31} In this case, the trial court made the finding that the child could not be placed with his parent within a reasonable time or should not be placed with Mother pursuant to R.C. 2151.414(B)(1)(a). For the R.C. 2151.414(B)(1)(a) factor, R.C. 2151.414(E) enumerates 15 factors for the court to consider. *In re L.C.*, 8th Dist. Cuyahoga No. 111053, 2022-Ohio-1592, ¶ 47. Pursuant to R.C. 2151.414(E), if the court determines, by clear and convincing evidence, that one or more of the (E)(1)-(15) factors exist, the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In the case herein, the trial court found the presence of (E)(1), (2), (9), (11), (14), and (15). The pertinent portions of the statute states as follows:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed

continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

* * *

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

* * *

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

* * *

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child

from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

{¶ 32} Only one of the enumerated factors under R.C. 2151.414(E) is required to exist for the court to make the finding that "'the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.'" *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 29, quoting *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000), and citing *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14 (the existence of only one factor will support the court's finding that the child cannot be reunified with the parent within a reasonable time).

{¶ 33} Pursuant to R.C. 2151.414(E)(1), the juvenile court found that Mother failed continuously and on numerous occasions to substantially remedy the conditions that had caused the removal of M.S.K. The record reveals that Mother failed to fully comply with substance abuse treatment and mental health services pursuant to her case plan. Further, Mother had failed drug screens and had not submitted to a drug screen since March 2022. Moreover, Mother remained in need of appropriate housing.

{¶ 34} Mother argues that she has engaged in services both in and outside of the case plan. Under R.C. 2151.414(E)(1), the issue is not whether Mother

substantially complied with the case plan, but whether Mother remedied the conditions that caused the child's removal. *Id.,* citing *In re J.B.,* 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, at ¶ 90.

{¶ 35} Under R.C. 2151.414(E)(2), the juvenile court found that Mother suffers from chronic chemical dependency that rendered her unable to provide M.S.K. with an adequate permanent home. In addition to the caseworker's testimony that the agency had lingering concerns about Mother's substance abuse, the caseworker also testified that two of M.S.K.'s siblings had previously been adjudicated neglected and ordered placed in the permanent custody of CCDCFS based upon Mother's substance abuse and mental health issues. At the time of trial, Mother had not demonstrated to the agency any level of sobriety. In addition, Mother had been arrested in June 2022 for disorderly conduct/intoxication.

{¶ 36} The juvenile court found under R.C. 2151.414(E)(11) that Mother had her parental rights involuntarily terminated with respect to two older siblings of M.S.K. In 2019, the agency was granted permanent custody of two of the child's siblings. Mother does not dispute this fact but argues that she has made changes and has shown the ability to support herself by working.

{¶ 37} The juvenile court also found pursuant to R.C. 2151.414(E)(14) that Mother was unwilling to provide a safe and secure home for the child or prevent him from suffering emotional or mental neglect. Mother acknowledges that the caseworker testified that the only supply Mother had obtained for M.S.K. was a bassinet. However, Mother maintains that M.S.K. "had an unexpected and

traumatic arrival into this world — he was born at 29 weeks gestation and Mother did not even know that she was pregnant." We understand that under these circumstances, Mother could certainly not be expected to be prepared for an infant; however, at the time of trial, M.S.K. was seven months old and Mother had made no showing that she had obtained basic infant supplies.

{¶ 38} The evidence presented supports the juvenile court's finding that despite the agency's efforts to reunify the child with Mother, Mother was not amenable to services and failed to remedy the conditions that caused the child to be placed outside the home. Standing alone, this evidence is sufficient to satisfy the first prong of the two-part analysis. Nevertheless, the juvenile court also found that Mother had chronic chemical dependency, had her parental rights involuntarily terminated with respect to the child's siblings for reasons similar to those in the instant case, and that Mother was unwilling to provide for the basic necessities of the child.

{¶ 39} We note that the court also made a finding under R.C. 2151.414(E)(9) that

> [t]he parent has placed the child at substantial risk of harm two or more times due to alcohol and drug abuse and was discharged from treatment two or more times after a case plan issued requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent[.]

{¶ 40} The court further made a finding under R.C. 2151.414(E)(15) that

> [t]he parent has committed abuse against the child and the court determines that the seriousness, nature, or likelihood of recurrence of

the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety. Child has special needs.

{¶ 41} There is no support in the record for either of the above findings (with the exception that M.S.K. does have special needs). While Mother and M.S.K. tested positive for cocaine at his birth, M.S.K. has not been in Mother's care since that day and consequently could not have been abused or placed in substantial harm by her. However, because only one factor is necessary to establish the first prong, and we have determined that the court properly made four other findings, these erroneous findings are harmless and may be disregarded.

{¶ 42} We find the record clearly and convincingly supports these findings and the juvenile court's ultimate determination under R.C. 2151.414(B)(1)(a) that M.S.K. could or should not be placed with Mother within a reasonable time.

{¶ 43} Once the first prong is met, the juvenile court must find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). "Clear and convincing evidence" is that measure or degree of proof that "produce[s] in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, at ¶ 8. A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory

elements for permanent custody had been established by clear and convincing evidence." *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16.

{¶ 44} We review a juvenile court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 45} In determining the best interest of a child at a hearing held pursuant to R.C. 2151.414(A)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 46} A juvenile court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, but "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has previously stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993). Further, the Supreme Court of Ohio has clarified that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31.

{¶ 47} Upon careful review of the entire record, including the court's findings as outlined above, we do not find that the juvenile court abused its discretion in determining that permanent custody was in the child's best interest.

{¶ 48} R.C. 2151.414(D)(1)(a) relates to the interaction and interrelationship of the child with various significant individuals in the child's life, including parents, siblings, relatives, and foster caregivers. The record reflects that Mother had in-person visits with M.S.K. where she cared for him appropriately, but she failed to engage in scheduled virtual visits. She only attended one of M.S.K.'s medical appointments and argued with the doctor to attempt to get him to change his mind about M.S.K. traveling to visits. Further, when Mother was holding M.S.K. at the

appointment, she continually bounced the child after being advised by the nurse to hold him still due to his severe GERD.

{¶ 49} There was very little testimony regarding M.S.K.'s foster family. The record does reflect that the foster family was trained to care for M.S.K.'s serious medical issues.

{¶ 50} Because M.S.K. was only seven months old at the time of trial and therefore unable to express his wishes, it was appropriate for the court to consider the GAL's recommendation with regard to custody. The court was not required to follow her recommendation, though. "[A] juvenile court is not compelled to follow the recommendation of the guardian ad litem; the decision of what is in a child's best interest is for the juvenile court upon a consideration of all the evidence presented." *In re C.T.*, 8th Dist. Cuyahoga No. 110303, 2021-Ohio-2274, ¶ 80, citing *In re M.W.,* 2017-Ohio-8580, 101 N.E.3d 95, ¶ 24 (8th Dist.); *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 34.

{¶ 51} R.C. 2151.414(D)(1)(c) relates to the child's custodial history. There is no dispute that, at the time of trial, M.S.K. had been in the custody of the agency for five months — since his discharge from the hospital when he was approximately three months old.

{¶ 52} R.C. 2151.414(D)(1)(d) concerns the child's need for a legally secure placement and whether that can be achieved without a grant of permanent custody. The trial court in this case found that M.S.K. could not be placed with Mother within a reasonable time or should not be placed with her. Specifically, the trial court made

findings under R.C. 2151.414(E) including Mother's failure to remedy the problems that caused the child to be placed outside the home, her chronic chemical dependency, and her unwillingness to provide basic necessities to M.S.K. "'Once a court determines, by clear and convincing evidence, that one of the enumerated factors exists, the court must enter a finding that the child cannot or should not be placed with either of his parents within a reasonable time.'" *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 43, quoting *In re Glenn*, 139 Ohio App.3d at 113, 742 N.E.2d 1210.

{¶ 53} Under R.C. 2151.414(D)(1)(e), the juvenile court was to consider whether any of the factors in divisions (E)(7) to (11) of R.C. 2151.414 applied in relation to Mother and the child. Under this section, the court noted that M.S.K.'s father had abandoned him and that Mother's parental rights had been terminated with regard to two of M.S.K.'s older siblings.

{¶ 54} The juvenile court's findings were supported by the testimony presented at trial. We find that the juvenile court did not abuse its discretion in determining that permanent custody was in the best interest of the child. Mother's first assignment of error is overruled.

{¶ 55} In her second assignment of error, Mother argues that the trial court abused its discretion in granting permanent custody to the agency when a disposition of temporary custody was available. She contends that reunification between Mother and M.S.K. was possible because Mother has demonstrated a change in behavior and motivation. Mother further points to the GAL's

recommendation of temporary custody, noting that she testified that Mother would be able to complete her case plan if was given additional time.

{¶ 56} Mother appears to argue that the court erred because "usually" the court will award temporary custody before moving to permanent custody. However, there are two ways an agency may obtain permanent custody. *In re J.F.*, 2018-Ohio-96, 102 N.E.3d 1264, ¶ 44 (8th Dist.), citing *In re E.P.*, 12th Dist. Fayette Nos. CA2009-11-022 and CA2009-11-023, 2010-Ohio-2761, ¶ 22. "An agency may first obtain temporary custody of the child and then file a motion for permanent custody under R.C. 2151.413." *Id.* "Or, an agency may request permanent custody as part of its original abuse, neglect, or dependency complaint under R.C. 2151.353(A)(4)" as in this case. *Id.*

{¶ 57} There is no statutory requirement that a child must first be placed into temporary custody prior to an order of permanent custody. "'[R.C. 2151.414(B)] does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors.'" *In re N.R.*, 8th Dist. Cuyahoga No. 110144, 2021-Ohio-1589, ¶ 42, quoting *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, at ¶ 64.

{¶ 58} The trial court found that M.S.K. could not be placed with Mother within a reasonable time or should not be placed with her and that permanent custody was in M.S.K.'s best interest. As outlined above, we determined that these findings were supported by clear and convincing evidence. Accordingly, we find no

abuse of discretion by the juvenile court in awarding permanent custody and declining to grant temporary custody. Mother's second assignment of error is overruled.

### III. Conclusion

{¶ 59} After thoroughly reviewing the entire record, we affirm the juvenile court's judgment granting permanent custody of the child to CCDCFS. The juvenile court's judgment was not against the manifest weight of the evidence, and it did not abuse its discretion in declining to award temporary custody rather than permanent custody. Clear and convincing evidence supported the juvenile court's findings and determination that permanent custody was in the best interest of M.S.K.

{¶ 60} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
EILEEN T. GALLAGHER, J., CONCUR

KEYWORDS
#111974 – In re M.S.K.

Termination of parental rights; permanent custody; manifest weight of the evidence; competent, credible evidence; R.C. 2151.414; clear and convincing evidence; child could not or should not be placed with parent; failure to substantially remedy the conditions causing removal; chronic chemical dependency; involuntary termination of other siblings; best interest of the child; abuse of discretion; guardian ad litem recommendation; temporary custody.

The juvenile court's judgment awarding permanent custody to the agency was not against the manifest weight of the evidence, and it did not abuse its discretion in declining to award temporary custody rather than permanent custody. Clear and convincing evidence supported the juvenile court's findings and determination that permanent custody was in the best interest of M.S.K.