[Cite as *In re Z.C.*, 2023-Ohio-1484.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE Z.C.

Minor Child

[Appeal by I.C., Father]

:
:
:
:
:
:
:

No. 112210

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 4, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-22906430

*Appearances:*

Dawn Snyder Law, LLC, and Dawn Snyder, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* Cuyahoga County Division of Children and Family Services.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant, I.C. ("Father"), appeals the decision of Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court") that granted permanent custody of his child Z.C. to the Cuyahoga County Division of Children

and Family Services ("CCDCFS" or "the agency") and terminated his parental rights. Upon a careful review of the record, we affirm the juvenile court's decision.

**Facts and Procedural History[1]**

{¶ 2}   Z.C. was born in June 2022 and is the minor child of Father and J.R. ("Mother"). Z.C. tested positive for fentanyl and cocaine at birth and experienced withdrawal symptoms after her birth. Shortly after Z.C.'s birth, CCDCFS filed a complaint for abuse and dependency and permanent custody to CCDCFS, and an amended complaint was later filed. On June 28, 2022, Z.C. was committed to the emergency temporary custody of CCDCFS.

{¶ 3}   On September 23, 2022, Father filed a motion for legal custody of Z.C. to himself. At the adjudicatory hearing held on October 25, 2022, the juvenile court adjudicated Z.C. to be abused and dependent. A dispositional hearing was held on October 28, 2022, at which time Z.C. was four-and-one-half months old. The juvenile court determined that it was going to grant permanent custody of Z.C. to CCDCFS.

{¶ 4}   According to the testimony and evidence provided in this matter, Mother and Father have a history of drug-related issues. Mother tested positive for multiple illicit substances during her pregnancy, as well as at the time of Z.C.'s birth. Mother had three other children removed from her custody, due in part to Mother's substance-abuse issues. Two of those children were committed to the permanent

---

[1] We have thoroughly reviewed the record and provide a brief overview herein.

custody of CCDCFS, and the third was committed to the legal custody of a relative. In this matter, Mother continued to test positive for multiple illicit substances and refused the recommended higher level of care. Mother's visitation with Z.C. was suspended after she had been observed falling asleep multiple times while with Z.C., including while holding Z.C., which created a safety concern.

{¶ 5} Father was the alleged father of two of Mother's other children. Father has several criminal drug-related convictions, including for possession and trafficking offenses, among others. He also had been charged with domestic violence for an alleged incident involving Mother. Father provided some information indicating that he was enrolled in IOP services and pursuing mental-health services, although the agency had not yet verified his engagement. In October 2022, Father tested positive for fentanyl, which is the same drug that Mother uses, but he claimed it must have been on something he touched. He had approximately four or five drug screens, with the others being negative. Father had not completed domestic-violence services and did not believe they were needed. Father indicated to several individuals that he was in truck driving school for a CDL license, but it was later discovered that he was not in fact enrolled. Father completed a parenting class, and the visitation with Z.C. that did occur was found appropriate, but his interaction was observed as "very limited." Although his home was found to be appropriate, he had received an eviction notice for nonpayment of rent and did not have any verifiable income. Father was referred to a fatherhood-initiative program for assistance with housing.

{¶ 6} The social worker recommended permanent custody to the agency, as did the family advocate for CCDCFS. The family advocate testified that after almost five months, Mother had not made any significant progress toward sobriety or housing or any of her case plan services and father had a positive fentanyl screen and a lengthy criminal history of drug trafficking.

{¶ 7} Z.C. was placed with a paternal relative, was well cared for in her placement, and was doing well in the placement. The paternal relative testified that Mother and Father initially had visitation at her home and that most of the time Father would simply drop Mother off for visits and would not stay. She testified that Mother was always on drugs and was always "nodding off and almost dropped the baby." The paternal relative further testified that when Father did stay for visitation, his interactions were good, but he typically would have Mother interacting with Z.C. The paternal relative expressed concern about Father's drug usage, anger issues, and his behavior patterns in "calling and saying he'll show up and [doesn't], and when he [does] show up, he'll just leave." She had reason to believe Father and Mother were still together, referenced the drug issues, and stated that "[t]hey have been doing this for years." She testified that in the past month or two, neither Mother nor Father had reached out to visit with or ask about Z.C. At one point, Father indicated that he was going to stop by to see Z.C. and that he wanted to get custody and wanted Mother to see the baby. The paternal relative did not believe Father was sincere with wanting custody of Z.C. She testified that she has "invited him to things to come

interact with the baby, and he wants nothing to do with her, but now [Mother] can't see the baby so now he wants the baby so [Mother] can see the baby."

{¶ 8} Although the guardian ad litem ("GAL") made a recommendation in her report for temporary custody to CCDCFS, the GAL indicated that she was changing her recommendation to permanent custody to the agency. The GAL testified to misleading information provided by Father. The GAL stated that Father had represented, among other things, that he and Mother were completely broken up, that he was attending CDL school and was set to graduate in a few weeks, and that he was not drug affected. The GAL stated that when she spoke with Father earlier in the week at the time of the adjudicatory hearing and asked about Father's positive drug test for fentanyl and his never having attended CDL school, Father chose to leave the courthouse. Father also did not disclose to the GAL that he was facing eviction. The GAL expressed her disappointment as to the lack of veracity of Father and believed nothing would change in eight months if the child was placed in the temporary custody of the agency.

{¶ 9} At the dispositional hearing, the trial court provided some of its reasoning for granting permanent custody to CCDCFS. The juvenile court noted the track record of Mother and Father and observed that in the seven years since their first child was born, Father has always said he is going to get his life together, yet never does, and previously he has not done anything as it relates to his children. The juvenile court commented upon Father's lack of veracity, noting that in this matter, he told numerous people he was on the path to getting his CDL license, "yet there's

no CDL license." The juvenile court recognized that Father denied having any drug-abuse issues, denied needing any domestic-violence services, and was not compliant with a no-contact order with Mother. The juvenile court found that Father could not provide for Z.C.'s basic needs because he was facing eviction and had no verifiable source of income. The juvenile court also made observations regarding Mother's inability to provide the necessary parental care for Z.C. The juvenile court did not believe Father was being honest about wanting to care for Z.C. and questioned whether this was "just some move so that you can get your daughter and then allow her mom to take care of her and putting that child in the worst position imaginable." As stated by the juvenile court, "[Z.C.] needs permanency and she'll be on a faster path to permanency with this decision as opposed to waiting two years * * *."

{¶ 10} On November 14, 2022, the juvenile court entered a journal entry that granted permanent custody of Z.C. to CCDCFS and terminated all parental rights of Mother and Father. The juvenile court set forth findings that are consistent with the record, considered the relevant best-interest factors under R.C. 2151.414(D)(1), and determined by clear and convincing evidence that a grant of permanent custody is in the best interest of Z.C. and that Z.C. could not be placed with one of the child's parents within a reasonable amount of time or should not be placed with either parent. The juvenile court included multiple findings under R.C. 2151.414(E).

{¶ 11} Father timely appealed.

**Legal Analysis**

{¶ 12} Under his sole assignment of error, Father claims the juvenile court's decision to award permanent custody to CCDCFS is against the manifest weight of the evidence and is not supported by clear and convincing evidence. Father challenges the juvenile court's findings under R.C. 2151.414(E) and its consideration of the best interest factors under R.C. 2151.414(D)(1).

{¶ 13} It is well recognized that parents have a fundamental liberty interest in the care, custody, and control of their children. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19-20, citing *Troxel v. Granville*, 53 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). However, that interest is always subject to the ultimate welfare of the child. *Id.* at ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 14} As was the case herein, an agency may request permanent custody as part of its original abuse, neglect, or dependency complaint under R.C. 2151.353(A)(4). *In re A.R.*, 8th Dist. Cuyahoga No. 109482, 2020-Ohio-5005, ¶ 30. Pursuant to R.C. 2151.353(A)(4), "[i]f a child is adjudicated an abused, neglected, or dependent child," the court may make an order of disposition that "[commits] the child to the permanent custody of a public services agency or private child placing agency," if the court (1) "determines in accordance with [R.C. 2151.414(E)] that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent" and (2) "determines in accordance with [R.C. 2151.414(D)(1)] that the permanent commitment is in the best interest of the

child." In this matter, the juvenile court made each of these determinations, as supported by clear and convincing evidence in the record.

{¶ 15} With regard to the first requirement, pursuant to R.C. 2151.414(E), "[i]f the court determines, by clear and convincing evidence, * * * that one or more of the [enumerated factors] exist as to each of the child's parents," then "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent[.]" "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re C.B.*, 8th Dist. Cuyahoga No. 92775, 2011-Ohio-5491, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). The Supreme Court of Ohio has recognized that the juvenile court only needs to find that one factor applies to support its holding under R.C. 2151.414(E). *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 50, citing *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996), syllabus.

{¶ 16} Here, the juvenile court made multiple findings under R.C. 2151.414(E), including R.C. 2151.414(E)(1), (2), (4), (11), (14), and (15). Father challenges each of these findings. He asserts that much of the evidence related to Mother's shortcomings, that there were improper assumptions made as to Father, and that the findings as they relate to Father are against the manifest weight of the evidence. Upon our review, we find the juvenile court's findings of one or more R.C. 2151.414(E) factors are supported by clear and convincing evidence.

{¶ 17} For example, clear and convincing evidence supports the juvenile court's determination under R.C. 2151.414(E)(1) that

> [f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

The record shows that Father refused to engage in domestic violence services.[2] He also tested positive for fentanyl shortly before trial. There was testimony that his conduct and behaviors had not changed in the last seven years. As observed by the GAL, "Completing services is the first step. Benefitting from those services and showing a change in behavior is another thing." There also was clear and convincing evidence to support the juvenile court's determination under R.C. 2151.414(E)(4) that "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." The record reflects that Father lacked a willingness to readily visit with the child. At times he would simply drop Mother off, and when he did stay for a visit, his interaction was described as "very limited." He did not call the caregiver to inquire about Z.C., and although he left diapers, they were not the correct size for the child. Further, Father never started truck driving school as he

---

[2] Although the domestic-violence charge was dismissed after Mother failed to appear to testify at trial, the juvenile court determined at the adjudicatory hearing in this matter that there was clear and convincing evidence regarding the issue of domestic violence, notwithstanding the lack of a criminal conviction.

represented to several individuals and he did not disclose to the GAL that he was facing eviction. Additionally, other findings under R.C. 2151.414(E) are likewise supported by clear and convincing evidence in the record. Therefore, the first requirement for terminating parental rights was met.

{¶ 18} The juvenile court's decision also reflects its consideration of the best-interest factors under R.C. 2151.414(D)(1), which are set forth in its decision. "[T]he best interests of the child are paramount in any custody case," and courts are to liberally interpret the statutes under R.C. Chapter 2151 "to provide for the care and protection of the child * * *." *In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, ¶ 32, citing R.C. 2151.01(A). In determining whether a grant of permanent custody is in the best interest of the child, R.C. 2151.414(D)(1) requires a juvenile court to "consider" all relevant factors, including the enumerated factors; however, the statute does not require a juvenile court to expressly discuss each of the best-interest factors. *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31. Further, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

{¶ 19} In challenging the juvenile court's best-interest determination, Father points to actions he has taken to obtain custody of Z.C. Despite evidence suggesting otherwise, he maintains that he ceased his relationship with Mother and that he is on track to be in the position to care for Z.C. at the conclusion of temporary

custody. While Father points to evidence favorable to him, the juvenile court was permitted to consider all material and relevant evidence in rendering its disposition.

{¶ 20} The record shows that although Father's interaction with Z.C. was appropriate, he did not always stay for visits and Mother was primarily with Z.C. when he did visit. Moreover, Father did not visit as frequently as he should, did not inquire about Z.C., and had not shown a sincere desire to care for the child himself. The GAL recommended an order of permanent custody to the agency and expressed how she was misled by Father. The child had been placed in agency custody shortly after birth, and although the child was only approaching five months old, as the juvenile court observed during the hearing, it did not believe Father was being honest and it did not believe "in continuing the inevitable." The juvenile court considered that the child could not achieve a legally secure placement without a grant of permanent custody. Also, the trial court found multiple R.C. 2151.414(E) factors apply, including (E)(11), and the record reflects that Father previously had parental rights involuntarily terminated with respect to a sibling of the child for whom he was an alleged father. Based on the foregoing, we find there is clear and convincing evidence in the record to support the juvenile court's determination that permanent custody to CCDCFS is in the child's best interest.

{¶ 21} Insofar as Father asserts that Z.C. was not even five months old and that the juvenile court took the extreme measure of granting permanent custody to CCDCFS, as this court has recognized, "[t]here is no statutory requirement that a child must first be placed into temporary custody prior to an order of permanent

custody." *In re M.S.K.*, 8th Dist. Cuyahoga No. 111974, 2023-Ohio-316, ¶ 57. "Although the termination of the rights of a natural parent should be an alternative of 'last resort,' such an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child." *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979). We are not persuaded by any other arguments raised.

{¶ 22} After thoroughly reviewing the entire record, we overrule Father's assignment of error and affirm the juvenile court's judgment granting permanent custody of the child to CCDCFS.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR